IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>C.W. MINING COMPANY,<br><br>        Debtor. | Bankruptcy No. 08-20105<br>(Chapter 7) |
| RHINO ENERGY LLC and CASTLE VALLEY MINING LLC,<br><br>        Plaintiffs,<br><br><br><br>        v.<br><br>C.O.P. COAL DEVELOPMENT COMPANY and ANR COMPANY, INC.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO WITHDRAW REFERENCE<br><br><br><br>Case No. 2:12-CV-418 TS |

This matter is before the Court on Defendants C.O.P. Coal Development Company

("COP Coal") and ANR Company, Inc.'s ("ANR") Joint Motion to Withdraw the Reference of

Adversary Proceeding 11-2250.[1]  Also before the Court is Plaintiffs Rhino Energy LLC and

---

[1]Docket No. 2.

Castle Valley Mining LLC's Motion for Leave to File Surreply.[2]  For the reasons discussed more fully below, the Court will deny Defendants' Motion without prejudice and grant Plaintiffs' Motion.

## I.  BACKGROUND

This dispute arises out of the involuntary Chapter 7 bankruptcy proceedings of C.W. Mining Company ("CWM").  Before entering bankruptcy, CWM was in the business of mining coal.  CWM's primary asset was an underground coal mine located in Emery County, Utah—the Bear Canyon mine.  The Bear Canyon mine is located on property owned by Defendant COP Coal.

In March of 1997, COP Coal and CWM entered into a coal mining agreement (the "COP Agreement").  Pursuant to the COP Agreement, COP Coal granted CWM the right to "operate and control" the Bear Canyon mine for purposes reasonably incidental to mining.  In September of 1999, ANR also entered into a Coal Operating Agreement (the "ANR Agreement") with CWM.  Pursuant to the ANR Agreement, ANR gave CWM the right to mine coal on ANR's property located adjacent to the Bear Canyon mine.

Section 5 of both the ANR and COP Agreements contain the following "Continuous Operation" and "Maximum Economic Recovery" clause:

> Operator (CWM) shall diligently and continuously operate the subject property for the term hereof unless the operation thereof prevented by strike, car shortages, government regulation, any act of God, or similar cause beyond the control of Operator, or unless all of the merchantable coal in said premises is sooner extracted, mined and removed.  Operator shall conduct all operations hereunder in

---

[2]Docket No. 36.

a good and minerlike manner and in a manner which will result in the ultimate maximum economic recovery of coal from the property.[3]

During the underlying bankruptcy proceedings the bankruptcy court made the following statement regarding this clause:

> At the heart of the dispute between the parties is the amount of discretion granted to the landlords, COP [Coal], and ANR, to determine how and when the operator must operate in order to fulfill its requirements under the operating agreements to "diligently and continuously operate" in a fashion that will realize the "ultimate maximum recovery" or, in other words, whether the landlords have discretion to impose their own standards for the safe, efficient, and non-wasteful operation of the mine.[4]

Additionally, COP Coal and ANR previously argued before the bankruptcy court that the "Resource Recovery and Protection Plan . . . submitted by the Debtor to the BLM in 2006 (the '2006 R2P2' ) and subsequently approved by the BLM amount in substance to an amendment of the COP Mine Operating Agreement or otherwise somehow have become unalterable obligations of the Operator under that agreement."[5]   "COP [Coal] contend[ed] that [Plaintiffs'] decision not to use longwall mining equipment to extract coal from the Tank Seam renders it impossible for [Plaintiffs] to mine out the entire reserves . . . within the remaining part of the 40-year mine-out period."[6]

Upon consideration of these issues, the bankruptcy court found that "[t]he uncontested evidence is that the BLM determines whether an operator is in compliance with the 'continued

_____

[3]Docket No. 21 Ex. 5, at 7.

[4]*Id*. at 4.

[5]Docket No. 21 Ex. 7, at 9–10.

[6]*Id*. at 10.

operation' and 'maximum economic recovery' requirements contained in the Code of Federal Regulations."[7]  The bankruptcy court further noted that:

> The stipulations imposed by the BLM and accepted by the Trustee . . . require in part that '[p]rior to commencement of mining of the Bear Canyon LMU, an update to the 2006 R2P2 shall be required . . . . Neither COP [Coal] nor ANR has any veto power or other right of control as to the contents or approval of such plans.[8]

Based on these findings, the bankruptcy court held that the Continuous Operations and Maximum Economic Recovery clause required only that CWM comply with state and local law and mine in accordance with the continuous operation standards required by the BLM.  The continuous operation standards of the BLM require that CWM mine at least 1% of the estimated recoverable coal reserves each year on a three-year rolling average.  Under this standard, the bankruptcy court found that CWM was in full compliance with the obligations imposed on it by the relevant agreements.

Plaintiffs then purchased the majority of CWM's mining assets—including the Bear Canyon mine—for $15 million.  On August 4, 2010, the bankruptcy court entered a sale order (the "Sale Order") approving the sale of CWM's mining assets to Plaintiffs.  As part of the Sale Order, the bankruptcy court specifically adopted and incorporated its findings of fact and conclusions of law relating to the Continuous Operation and Maximum Economic Recovery clause.[9]  The Sale Order closed on August 25, 2010.

---

[7]*Id*. at 11.

[8]*Id.*

[9]*See id*. Ex. 4, at 17.

On January 7, 2011, Defendants issued default notices to Plaintiffs to terminate the COP and ANR Agreements.  Receipt of the default notices prompted Plaintiffs to file the adversary proceeding which Defendants now seek to withdraw.  Defendants subsequently withdrew their original default notices on the eve of a preliminary injunction hearing before the bankruptcy court.  Defendants issued additional default notices on January 26, 2012.

In their default notices, Defendants provide Plaintiffs sixty-days notice of default under the COP and ANR Agreements.  Defendants assert that Plaintiffs defaulted under the relevant agreements by not seeking COP Coal and ANR's approval before obtaining an amended R2P2 from the BLM.  Defendants' principal objection to the amended R2P2 involves: (1) the time frame for removal of coal from the Bear Canyon mine—the amended R2P2 contemplates removal of coal after the termination of the COP Coal and ANR Agreements and will thereby limit the amount of royalties owed to Defendants during the term of the lease; and (2) the method of coal removal—the amended R2P2 approves the use of the "continuous mining method" in lieu of the "longwall method" preferred by COP Coal and ANR.

Defendants' notices also contain an exhaustive list of alleged violations of federal regulations and state and local law allegedly committed by Plaintiffs in the course of mining the Bear Canyon mine.  Lastly, Defendants allege that Plaintiffs have failed to pay royalties on all coal extracted and removed from the premises of the Bear Canyon mine.  Defendants assert that Plaintiffs' violations and submission of the amended R2P2 constitute a breach of the COP and ANR Agreements.  Defendants close their default notices with the following ultimatum:

> If any of the defaults identified above continue for a period of 60 days after
> service of this Notice, [Defendants] will immediately terminate the Operating

5

Agreement, together with all of [Plaintiffs'] rights thereunder, and may at its sole option elect to take immediate possession of the property as permitted under the Operating Agreement[s].[10]

Plaintiffs filed their Second Amended Complaint in the adversary proceeding on February 24, 2012.[11]  In their Second Amended Complaint, Plaintiffs bring the following causes of action: (1) declaratory judgment as to the royalties owed under the COP Agreement; (2) declaratory judgment as to the royalties owed under the ANR Agreement; (3) declaratory judgment as to alleged default for amending and mining under the R2P2 plan; (4) declaratory judgment as to notice of default of continuous operations clause and other miscellaneous alleged defaults; (5) issuance of an injunction against COP Coal and ANR from issuing notice of termination or forfeiture; and (6) declaratory judgment against ANR and COP Coal as to claims for damages based on R2P2 plans.

On April 9, 2012, COP Coal and ANR filed their Answer to Plaintiffs' Second Amended Complaint and Counterclaims.[12]  Based on the alleged violations contained in their default notices, Defendants assert the following counterclaims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) alternative claim of unjust enrichment; (4) conversion; (5) negligence; (6) trespass; and (7) intentional interference with economic relations. On April 30, 2012, Defendants filed the instant Motion to Withdraw.

---

[10]Docket No. 21 Ex. 8, at 19, 81.

[11]*See* Docket No. 21 Ex. 9.

[12]*See* Adversary Proceeding No. 2:11-AP-2250, Docket Nos. 90, 91.

6

## II.  DISCUSSION

### A.    TIMELINESS

Twenty-eight U.S.C. § 157(d) provides that this Court "may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown."  The local rules for the District of Utah provide a clear deadline for a "timely" filed motion.  Under DUCivR 83-7.4(c)(2) "an original defendant, intervenor, or an added party, seeking to withdraw the reference of an adversary proceeding, must file a Withdrawal Motion within twenty-one (21) days after entering an appearance in the adversary proceeding."

Defendants entered their original appearance in the underlying adversary proceeding more than a year before filing their Motion to Withdraw.  Thus, under the clear language of the local rule, Defendants' Motion is untimely.  Nevertheless, Defendants argue that this Court should consider their Motion timely filed because they filed their Motion to Withdraw within twenty-one days of filing their Counterclaims against Plaintiffs.  According to Defendants, their action in filing for withdrawal after filing counterclaims fills in the "hole" in the Rule.  The Court is not persuaded that such a "hole" exists in the local rule.

The local rule unambiguously provides that an original defendant—such as the Defendants in this case—must file a motion to withdraw within twenty-one days of entering an appearance.  Thus, timeliness under the local rule does not turn on a defendant's tactical strategy in responding to the complaint; rather, it looks to the amount of time a defendant has appeared and the opportunity a party has to view the facts giving rise to the dispute.  Defendants do not

dispute that they were aware of the facts giving rise to the adversary proceeding for over a year before filing their Motion to Withdraw.

The importance of the twenty-one day requirement of local rule 83-7.4(c)(2) is readily apparent in this case. Over the course of the year that the adversary proceeding was pending before the bankruptcy court, the parties engaged in discovery and filed numerous motions—including multiple motions for preliminary injunction and motions for summary judgment. The bankruptcy court ruled on various motions and heard argument on others. By delaying in filing their Motion to Withdraw, Defendants risk wasting the resources of the Court and all parties involved. This is not a tactic the Court condones.

For these reasons, the Court finds that Defendants' Motion to Withdraw is untimely and, therefore, shall deny the Motion. However, given the constitutional concerns raised in this case, the Court will dismiss Defendants' Motion without prejudice to it being re-raised pursuant to the terms set out below.

B.    CONSTITUTIONAL CONCERNS

Defendants raise two constitutional arguments that they argue require withdrawal of the bankruptcy reference. Defendants assert that withdrawal is warranted: (1) because the parties have a Seventh Amendment right to a jury trial on their claims and Defendants have not consented to their claim being heard by the bankruptcy court; and (2) because the bankruptcy court is not an Article III court and is therefore without power to hear state law counterclaims.

1.     JURY TRIAL

The Seventh Amendment provides for preservation of the right to trial by jury in suits at common law where the value of the controversy exceeds twenty dollars.[13]  "Because the bankruptcy court does not have authority to conduct a jury trial, 'cause' to withdraw the reference automatically exists in cases where the party seeking withdrawal is entitled to a jury trial under the Seventh Amendment."[14]  In *Granfinanciera, S.A. v. Nordberg*,[15] the United States Supreme Court developed a three-part analysis for determining whether a party has a Seventh Amendment right to a jury trial.

> First, a court analyzing a demand for a jury trial under the Seventh Amendment must "compare the statutory cause of action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Second, such a court must "examine the remedy sought and determine whether it is legal or equitable in nature."[16]

Lastly, "the court must 'decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.'"[17]

As a threshold issue, the parties dispute whether Defendants have requested and are entitled to a jury trial on all claims.  Plaintiffs argue that Defendants are not entitled to a jury trial

---

[13]*See* U.S. Const. Amend. VII.

[14]*Rushton v. Phila. Forest Prods., Inc. (In re Americana Expressways, Inc.)*, 161 B.R. 707, 709 (D. Utah 1993) (citing *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 392 (10th Cir. 1990)).

[15]492 U.S. 33 (1989).

[16]*In re Americana Expressways*, 161 B.R. at 709–10 (quoting *Granfinanciera*, 492 U.S. at 42).

[17]*Id*. at 710 (quoting *Granfinanciera*, 492 U.S. at 42).

because their Counterclaims are foreclosed by the Sale Order under the doctrine of collateral

estoppel and because Defendants have not made an appropriate jury demand in their Answer.

Defendants have made a proper jury demand in their Counterclaim.  Furthermore, whether

Defendants' claims are barred by the doctrine of collateral estoppel is a legal argument that has

no bearing on whether Defendants properly assert a right to jury trial in their pleadings.

Therefore, Plaintiffs' arguments are unavailing.

Defendants allege counterclaims for breach of contract, breach of implied covenants,

unjust enrichment, conversion, negligence, trespass, and interference with economic relations.

Defendants seek money damages for all these claims.  Plaintiffs do not dispute that under the

*Granfinanciera* test Defendants would be entitled to a jury trial on their claims.  The Court

would note, however, that Defendants' portrayal of this case as a simple contract dispute that has

led to the commission of related state-law torts is disingenuous.  The parties' claims arise from

the bankruptcy court's interpretation of the relevant lease agreements as contained in the Sale

Order.

Although Defendants have properly requested a jury trial on their Counterclaims, the

Court "may decline to withdraw the reference until the case is ready for trial."[18]  As the Second

Circuit has noted:

> a district court might find that the inability of the bankruptcy court to hold the trial
> constitutes cause to withdraw the reference.  However, a district court also might
> decide that a case is unlikely to reach trial, that it will require protracted discovery
> and court oversight before trial, or that the jury demand is without merit, and

---

[18]*Hardesty v. Severson (In re Hardesty)*, 190 B.R. 653, 656 (D. Kan. 1995).

therefore might conclude that the case at that time is best left in the bankruptcy court.[19]

"The bankruptcy court has authority even when a jury trial has been demanded, to supervise discovery, conduct pretrial conferences, and rule on motions."[20]

Other district courts, in similar circumstances, have denied without prejudice motions to transfer allowing the parties an opportunity to file a stipulated withdrawal once the case is ready to proceed to a jury trial.[21]  Such an approach capitalizes on the bankruptcy court's familiarity with the proceedings and its knowledge of bankruptcy law.  Here, this approach would allow the bankruptcy court an opportunity to address the applicability of its Sale Order and will ensure that judicial resources are not wasted.

In sum, Defendants have made a proper jury demand and may be entitled to a jury trial on their Counterclaims.  Therefore, Defendants have demonstrated "cause" for the adversary proceeding to be withdrawn.  However, given the procedural posture of this case and the likelihood that Defendants' jury demand is without merit, the Court will order that the bankruptcy court continue to supervise discovery, conduct pretrial conferences, and rule on motions until such time as the case is ready to proceed to trial.

---

[19]*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101–02 (2d Cir. 1993).

[20]*Kirk E. Douglas, Inc. v. Watrous & Ehlers, P.C. (In re Kirk Douglas, Inc.)*, 170 B.R. 169, 170 (D. Colo. 1994) (internal citations omitted).

[21]*See In re Hardesty*, 190 B.R. at 657.

11

2.      JURISDICTION

The jurisdiction and authority of the bankruptcy court to hear the parties' claims involves

consideration of the interplay between two recent Supreme Court cases: *Stern v. Marshall*[22]  and

*Travelers Indemnity Co. v. Bailey*.[23]

In *Stern*, the Court addressed "whether a bankruptcy court judge . . . had the authority

under 28 U.S.C. § 157 and Article III to enter final judgment on a counterclaim filed by [a

bankruptcy petitioner] against [a respondent] in [the petitioner's] bankruptcy proceedings."[24]

The *Stern* Court held that the bankruptcy court had the statutory authority to enter a final

judgment under § 157.  However, the Court went on to hold that the bankruptcy court was

without authority under Article III of the Constitution because it "exercised the 'judicial Power of

the United States' in purporting to resolve and enter final judgment on a state common law

claim."[25]

The parties have discussed the facts of *Stern* at length.  However, the parties do not

appear to dispute the applicability of *Stern* to state common law counterclaims.  It is clear under

*Stern* that because the bankruptcy court is not an Article III court, it cannot enter final judgment

on state common law counterclaims "raised independent of federal bankruptcy law."[26]

---

[22]131 S. Ct. 2594 (2011).

[23]557 U.S. 137, 151 (2009).

[24]*Stern*, 131 S. Ct. at 2595.

[25]*Id*. at 2611.

[26]*Id*.

In *Travelers Indemnity*, the Court addressed the question of whether a bankruptcy court retained subject matter jurisdiction to enter a clarifying order regarding an order and injunction it entered nearly two decades earlier.[27]  The Court held: "The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."[28]  In *Travelers Indemnity*, the bankruptcy court dismissed state common law claims it held were barred by its prior order.  To reach this conclusion, the bankruptcy court considered the alleged factual predicate of the state common law claims and found that the "claims against Travelers based on such actions or omissions necessarily 'arise out of' and are 'related to' the insurance policies" that were the subject of the prior order.[29]

Here, Plaintiffs assert that the resolution of the parties' claims are similarly based on a single factual predicate—the interpretation and enforcement of the Sale Order.  Defendants do not dispute Plaintiffs' characterization of this case.  It is clear under *Travelers Indemnity* that the bankruptcy court has jurisdiction to interpret and enforce its prior Sale Order.  Thus, to the extent the parties' claims are based on the Sale Order, the bankruptcy court has jurisdiction and authority to hear such claims.  *Stern* forecloses the bankruptcy court from entering final judgment on Defendants' Counterclaims only if such are "raised independent of federal bankruptcy law."  Or, in other words, only if the Counterclaims are raised independent of the bankruptcy court's

---

[27]*Travelers Indem.*, 557 U.S. at 151.

[28]*Id.* (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

[29]*Id.* at 144.

interpretation and enforcement of the Sale Order.  Furthermore, even if the Counterclaims are not

based on the interpretation and enforcement of the Sale Order, the bankruptcy court is not

divested completely of jurisdiction and may still issue proposed findings of fact and conclusions

of law in the same manner as provided in 28 U.S.C. § 157(c)(1).[30]

Therefore, the Court finds that the bankruptcy court has jurisdiction and authority to hear

the parties' claims and will deny Defendants' Motion on these grounds.

C.      MANDATORY WITHDRAWAL

Lastly, Defendants assert that withdrawal is mandatory because this case involves (1)

personal injury torts and (2) consideration of federal laws and regulations governing coal mining

which is an activity affecting interstate commerce.

1.      PERSONAL INJURY TORTS

 Twenty-eight U.S.C. § 157(b)(5) states that "personal injury tort and wrongful death

claims shall be tried in the district court in which the bankruptcy case is pending, or in the district

court in the district in which the claim arose."  Defendants assert that the Court should recognize

their negligence, conversion, trespass, and interference claims as "personal injury torts" for

purposes of § 157(b)(5).  "After examining the statute's text and other courts' relevant decisions,

this Court concludes that the personal injury exception under § 157 is limited to a narrow range

of claims that involve an actual physical injury."[31]  Defendants have not alleged an actual

---

[30]*Stern*, 131 S. Ct. at 2620 (citing 28 U.S.C. § 157(c)(1)).

[31]*Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 351 (E.D. Va. 2006)
(holding that a mine owner's claims against political advocacy group and bankrupt television
station for defamation and business conspiracy were not "personal injury torts," and thus were

physical injury, therefore, the Court finds that they have not alleged a personal injury tort for purposes of § 157(b)(5).

      2.      INTERSTATE COMMERCE

As a separate grounds for mandatory withdrawal, § 157(d) provides that: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." "Although the language of this provision is broad, the legislative history indicates that it is to be construed narrowly to avoid it becoming an escape hatch through which most bankruptcy matters will be moved to a district court."[32] "[C]ourts have read 'consideration' to mean 'something more than the mere process of examining, thinking about, or taking into account.'"[33] In light of this background, this Court has previously held that "withdrawal is mandatory only if the court can make an affirmative determination that resolution of the claims will require substantial and

---

core proceedings subject to mandatory abstention where there was no allegation of actual physical injury); *see also In re Interco*, 135 B.R. 359 (Bankr. E.D.Mo. 1991) (holding that an emotional distress claim was not within the meaning of "personal injury tort"); *In re Vinci*, 108 B.R. 439 (Bankr. S.D.N.Y. 1989) ("[A] tort without trauma or bodily injury is not within the statutory exception for a personal injury claim.").

    [32]*In re Americana Expressways*, 161 B.R. at 714 (internal quotation and citations omitted).

    [33]*Id.* (quoting *Am. Freight Sys., Inc. v. I.C.C. (In re Am. Freight Sys. Inc.)*, 150 B.R. 790, 792 (D. Kan. 1993)).

material consideration of non-Code statutes.  The consideration of the non-Code law must entail more than its routine application to the facts."[34]

Here, Defendants assert that mandatory withdrawal is appropriate because Plaintiffs' claims require consideration of federal laws and regulations governing coal mining.  Specifically, Defendants point to Paragraph 53 and Paragraphs 76–78 of the Second Amended Complaint as providing for mandatory withdrawal.  Paragraph 53 alleges as follows: "Most importantly, this Court concluded that '[S]o long as Buyer mines in substantial compliance with an R2P2 Plan as approved by the BLM and substantially complies with the applicable Federal, State and local laws, the Buyer is not in default under paragraph 5 of the Mine Operating Agreements.'"[35]

Paragraphs 76–78 involve the Continuous Operation clauses contained in Defendants' Agreements.  Plaintiffs allege that they are entitled to a declaratory judgment that they are not in default under the Continuous Operation clauses because

> under the COP Agreement, the ANR Agreement and the Sale Order, there can be no default of the third paragraph of the Continuous Operations Clause, unless a government agency responsible for enforcing applicable laws or regulations issues to [Plaintiffs] a written, formal, material and substantial notification that it has failed substantially to comply with federal, state or local law and [Plaintiffs] ha[ve] failed to cure that violation.[36]

> Lastly, in Paragraph 78, Plaintiffs seek a

> declaratory judgment and decree by this Court that recognizes that active coal mines in the ordinary course regularly receive formal notices of violation from federal, state and local offices, and that these usual and ordinary notices of

---

[34]*Id*. at 715.

[35]Docket No. 21 Ex. 9, at 21.

[36]*Id*. at 36.

violation are not the kind of violations that would put [Plaintiffs] in default of the ANR Agreement or the COP Agreement.[37]

Defendants argue that each of the allegations provided above require consideration and interpretation of the federal laws and regulations involved.  The Court is not persuaded.

The mining of coal is an activity affecting interstate commerce and, thus, involves rules and regulations that affect interstate commerce.  Here, however, the declaratory relief Plaintiffs seek directly involves the bankruptcy court's prior interpretation of the Continuous Operation clauses of Defendants' respective agreements.  The consideration of "Federal, State and local laws" is a collateral issue that entails no more than the routine application of applicable law to the facts of this case and the proper interpretation of the relevant agreements and the Sale Order. For this reason, Defendants have failed to demonstrate that the resolution of this case will require substantial and material consideration of non-Code statutes and, therefore, the Court finds that mandatory withdrawal is not warranted under § 157(d).

D.      SURREPLY

Plaintiffs seek leave to file a surreply to respond to constitutional arguments raised for the first time in Defendants' Reply.  The Court will grant Plaintiffs' Motion and has considered Plaintiffs' surreply in its review of the briefing on Defendants' Motion.

---

[37]*Id.*

17

IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Joint Motion to Withdraw the Reference of Adversary

Proceeding 11-2250 (Docket No. 2) is DENIED WITHOUT PREJUDICE.  The parties may file

a joint motion to withdraw the reference when, and if, any remaining issues are ready to be

submitted for a jury trial.  It is further

ORDERED that Plaintiffs' Motion for Leave to File a Surreply (Docket No. 36) is

GRANTED.  The Clerk of Court is directed to close this case forthwith.

DATED   October 15, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge